**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

UT TRAN,

                    Petitioner,

          v.

JESSICA SAGE,

                    Respondent.

CIVIL ACTION NO. 3:26-CV-01855

(MEHALCHICK, J.)

**MEMORANDUM**

Petitioner UT Tran ("Tran") brings this petition for writ of habeas corpus. (Doc. 1). On July 6, 2026, Tran filed the instant petition, requesting that Respondent Jessica Sage ("Sage") release him from custody at the Lewisburg Federal Correctional Institution ("FCI Lewisburg"). (Doc. 1, at 5-6). On July 14, 2026, Sage filed a response to Tran's petition. (Doc. 6). Tran did not file a timely traverse. For the following reasons, Tran's petition (Doc. 1) is **DENIED**.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

The following background is derived from Tran's petition, Sage's response, and the exhibits thereto. (Doc. 1; Doc. 6). Tran is a citizen of Vietnam, who arrived in the United States in the early 1980s as a refugee. (Doc. 1, at 1; Doc. 7, at 2). On February 4, 1982, United States Citizenship and Immigration Services adjusted Tran to lawful permanent resident status. (Doc. 1, at 1; Doc. 7, at 2).

On November 23, 1998, local authorities arrested Tran in Philadelphia, Pennsylvania and charged him with possession of an instrument of crime, burglary, criminal trespass, theft by unlawful taking, receiving stolen property, and loitering and prowling at nighttime. (Doc. 7, at 3). A Philadelphia court sentenced Tran to not less than six months nor more than

twenty-three months incarceration and three years' probation on June 20, 1999. (Doc. 7, at 3). On September 6, 2001, a Philadelphia court convicted Tran for theft by unlawful taking, receiving stolen property, and unauthorized use of auto or vehicle. (Doc. 7, at 3).

On July 8, 2004, the Department of Homeland Security ("DHS") issued Tran a notice to appear in immigration court. (Doc. 7, at 4). On August 13, 2004, an immigration judge ordered Tran removed to Vietnam. (Doc. 1, at 1; Doc. 7, at 4). Tran was held in immigration detention for just over three months, before immigration authorities released him on an order of supervision on November 29, 2004. (Doc. 7, at 4).

On October 31, 2008, a Philadelphia court convicted Tran for the offense of receiving stolen property. (Doc. 7, at 4). On March 18, 2010, a Philadelphia court convicted Tran for violating the controlled substance drug and cosmetic act. (Doc. 7, at 4). On September 22, 2010, a Philadelphia court convicted Tran for the offense of receiving stolen property. (Doc. 7, at 5). On May 11, 2011, a Philadelphia court convicted Tran for the offenses of burglary and criminal conspiracy. (Doc. 7, at 5). On November 27, 2014, local authorities arrested Tran in Philadelphia, Pennsylvania and charged him with violating the controlled substance drug and cosmetic act. (Doc. 7, at 6). On July 10, 2015, a Philadelphia court sentenced Tran to probation for a term of one year and three months. (Doc. 7, at 6). On May 24, 2016, a Philadelphia court convicted Tran for the offenses of aggravated assault and possessing an instrument of a crime. (Doc. 7, at 6). The court sentenced Tran to incarceration for a term of nine to twenty years for the aggravated assault and two years and six months to five years for possessing an instrument of crime. (Doc. 7, at 6).

On March 31, 2026, Immigration and Customs Enforcement ("ICE") approved the revocation of Tran's order of supervision that was put into place upon his release from

immigration detention in 2004. (Doc. 7, at 6). ICE arrested Tran on April 15, 2026, following his release from SCI Benner Township, and transferred him to the Moshannon Valley ICE Processing Center. (Doc. 1, at 1; Doc. 7, at 6). On April 29, 2026, ICE transferred Tran to FCI Lewisburg. (Doc. 1, at 1; Doc. 7, at 6). On May 8, 2026, DHS submitted at travel document request for Tran to the Counsel General for Vietnam. (Doc. 7, at 7). On June 24, 2026, ICE conducted a custody review for Tran and determined that due to his extensive criminal history, including convictions Tran received while on supervised release from immigration detention, Tran should not be released. (Doc. 7, at 7). Since ICE revoked his order of supervision, Tran has been in immigration detention for just over three months. (Doc. 7, at 6). In total, Tran has been in immigration detention for about six and a half months. (Doc. 7, at 4, 6).

## II.    LEGAL STANDARD

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and

3

constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing or release if the Court determines that a noncitizen habeas petitioner is entitled to such relief under relevant constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the due process clause of the Fifth Amendment); *see Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 400 (D.N.J. 2025) (finding petitioner's continued detention without reasonably imminent removal is unreasonable and ordering release).

## III.   JURISDICTION

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). Recently, in *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026), the Third Circuit determined that the Immigration and Nationality Act ("INA") strips district courts of subject-matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a petition for review of a final order of removal ("PFR"). However, the Third Circuit clarified that district courts retain jurisdiction over habeas petitions presenting "now or never" questions of law that cannot be meaningfully reviewed later on a PFR. *Kahlil*, 164 F.4th at 273-74.

4

Habeas actions based on whether a petitioner is subject to unconstitutionally lengthy detention remain in the jurisdiction of district courts. *Kahlil*, 164 F.4th at 277-79 (holding detention-specific claims, like length and conditions-of-confinement claims, do not arise from removal proceedings and can be addressed by district courts); *see Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal, the government's decision to detain in the first place, and the process by which removability will be determined); *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."). The question of whether a petitioner's detention has been unconstitutionally long is wholly collateral to removal proceedings and cannot be meaningfully reviewed on a PFR. *Kahlil,* 164 F.4th at 278-79 (finding that length of confinement claim "does not get channeled into the PFR review process"). Thus, the Court retains jurisdiction over the legal question of whether Tran's detention has become unconstitutionally prolonged and unrelated to the purpose of removal. *Jennings,* 583 U.S. at 294; *Kahlil,* 164 F.4th at 274-79; *Zadvydas,* 533 U.S. at 688.

## IV.    DISCUSSION

Tran contends that his immigration detention has become unreasonably prolonged in violation of 8 U.S.C. § 1231(a)(6) and the Due Process Clause of the Fifth Amendment. (Doc. 1, at 3-5). Tran reasons that his 90-day statutory removal period has run and that, in aggregate, he has been in ICE custody beyond the presumptively reasonable six months. (Doc. 1, at 1, 4). Tran avers that there is not a significant likelihood of his removal in the reasonably foreseeable future because DHS has been unable to remove him from the United States for

twenty-two years, since 2004. (Doc. 1, at 1). The government counters that since his supervisory release was revoked, Tran has only been detained for three months, so the burden cannot reasonably shift to the government to justify Tran's continued detention. (Doc. 7, at 9). The government also provides that Tran has received and will continue to receive individualized custody reviews until his removal is effectuated in the reasonably foreseeable future. (Doc. 7, at 10).

Section 1231 of the INA provides for the detention of noncitizens with final orders of removal. 8 U.S.C. § 1231. Pursuant to 8 U.S.C. § 1231, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Noncitizens convicted of certain criminal offenses and noncitizens whom the Attorney General finds to be a risk to the community or unlikely to comply with an order of removal may be detained beyond the 90-day removal period. 8 U.S.C. § 1231(a)(6).

In *Zadvydas v. Davis*, 533 U.S. 678, 690-91 (2001), the Supreme Court found that indefinite detention of a noncitizen with a final order of removal violates the Due Process Clause of the Fifth Amendment, and that detention of a noncitizen with a final order of removal must be limited with a definite endpoint. The Supreme Court determined that to discern whether post-order of removal detention comports with the Due Process Clause of the Fifth Amendment, habeas courts must ask whether the detention "exceeds a period reasonably necessary to secure removal." *Zadvydas*, 533 U.S. at 699. The Supreme Court found that detention post-order of removal is presumptively reasonable for a period under six months. *Zadvydas*, 533 U.S. at 701. After the presumptively reasonable six month period runs and the detained noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond

with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. As the period of confinement grows, what counts as reasonably foreseeable future conversely shrinks. *Zadvydas*, 533 U.S. at 701. If removal is ultimately not reasonably foreseeable, habeas courts should hold continued detention unreasonable. *Zadvydas*, 533 U.S. at 699-700.

Neither the Supreme Court nor the Third Circuit have definitively ruled on whether nonconsecutive detention periods may be aggregated. *Lam v. Noem*, No. 3:25-CV-00397, 2026 WL 492383 at * 5 (W.D. Pa. February 23, 2026). However, if the detention periods were not cumulative, "the government could otherwise detain aliens indefinitely by continuously releasing and re-detaining them." *Abuelhawa v. Noem*, 811 F. Supp. 3d 847, at 855-56 (S.D. Tex. 2025) (collecting multiple cases in which courts across the country have held that prior detentions count towards the six-month period under *Zadvydas*). To allow the presumptively reasonable detention period to restart after every re-detainment could seriously undercut the holding of *Zadvydas*. *Abuelhawa*, 811 F. Supp. 3d at 855-56 (collecting cases).

When the government has tried and failed for years to effectuate an immigration detainee's removal, there is good reason to believe that removal is not likely in the reasonably foreseeable future. *Kargapolov v. Oddo*, No. 3:26-CV-00755, 2026 WL 1413057, at *3 (W.D. Pa. May 20, 2026); *Mohmand v. Sage*, No. 3:26-CV-01155, 2026 WL 1859350, at *3 (M.D. Pa. June 29, 2026); *Saley v. Scott*, No. 2:26-CV-00797, 2026 WL 914810, at *3 (W.D. Wash. Apr. 3, 2026). However, the likelihood of removal to Vietnam has changed significantly since 2008.[1] While removal to Vietnam for pre-1995 refugees historically was unlikely, the

---

[1] Vietnam long refused to accept Vietnamese nationals who came to the United States as refugees before 1995. *Nguyen v. Scott*, 796 F. Supp. 3d 703, 714 (W.D. Wash. 2025); *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1083-84 (C.D. Ca. 2020). After the Vietnam War, the North Vietnamese government established the current Socialist Republic of Vietnam, and hundreds of thousands of people from the former Republic of Vietnam (South Vietnam) immigrated to

government has been able to efficiently effectuate the removal of such individuals since the signing of the 2020 Memorandum of Understanding between Vietnam and the United States, particularly since January 2026. *See Phan v. Warden of Fed. Corr. Inst. Lewisburg*, No. 3:26-CV-00770, 2026 WL 1103774, at *1 (M.D. Pa. April 23, 2026); *see also Nguyen v. Sage*, No. 3:26-CV-00545, 2026 WL 1147188, at *3-*4 (M.D. Pa. April 28, 2026).

The Court does not find Tran's petition to be premature. After an immigration judge ordered his removal, Tran was initially detained for just over three months, from August 13, 2004, until November 29, 2004. (Doc. 7, at 4). After ICE revoked Tran's supervisory release and arrested Tran on April 15, 2026, Tran has been re-detained in ICE custody for just over three months. (Doc. 7, at 6). Tran's cumulative period of immigration detention, about six and a half months, is just over the six-month presumptively reasonable period of detention to effectuate removal. *See Abuelhawa*, 811 F. Supp. 3d at 855-56 (collecting cases); *see Zadvydas*, 533 U.S. at 701. Accordingly, Tran's immigration detention can no longer be considered

---

the United States as refugees under various humanitarian programs. *See Trinh*, 466 F. Supp. 3d at 1083-84. Between the end of the Vietnam War and 2008, Vietnam refused to repatriate any Vietnamese immigrants who had been ordered removed from the United States. *Trinh*, 466 F. Supp. 3d at 1083-84. In 2008, the United States and Vietnam reached a diplomatic agreement, and Vietnam agreed to consider repatriation requests for certain Vietnamese immigrants, who had arrived in the United States after July 12, 1995.[2] *Trinh*, 466 F. Supp. 3d at 1083-84. In 2017 and 2018, ICE met with Vietnamese officials to negotiate the repatriation of pre-1995 Vietnamese immigrants; however, these efforts proved unsuccessful, and ICE instructed field offices to release pre-1995 Vietnamese immigrants on orders of supervision within 90 days of their final orders of removal. *Trinh*, 466 F. Supp. 3d at 1083-84. In November 2020, the United States and Vietnam entered into a memorandum of understanding, which created a process for removing pre-1995 Vietnamese refugees. *Luong v. Oddo*, 3:25-cv-00422, Dkt. No. 21 (W.D. Pa. Feb. 20, 2026); *Nguyen v. Hude*, 788 F. Supp. 3d 144, 148 (D. Mass. 2025).

presumptively reasonable. *See Abuelhawa*, 811 F. Supp. 3d at 855-56 (collecting cases); *see Zadvydas*, 533 U.S. at 701.

To show that his removal is not significantly likely in the reasonably foreseeable future, Tran submits that he received an order of removal on August 13, 2004 and twenty-two years later, the government has still been unable to remove him to Vietnam. (Doc. 1, at 1). Tran avers that "[g]iven DHS's delay thus far, there is no significant likelihood that [he] will be removed from the country in a reasonably foreseeable time." (Doc. 1, at 1). As the government has been unable to effectuate his removal in the past twenty-two years, Tran has provided good reason to believe that his removal in not likely in the reasonably foreseeable future. *See Kargapolov*, 2026 WL 1413057, at *3 (finding that a plaintiff showing that the government has tried and failed for years to obtain travel documents "is more than adequate to shift the burden to Respondents to rebut Petitioner's showing that his removal is not reasonably foreseeable"); *see Mohmand*, 2026 WL 1859350, at *3 (finding petitioner's removal was not reasonably foreseeable because the government failed to effectuate his removal for seventeen years); *see also Saley*, 2026 WL 914810, at *3 (finding that a petitioner met their burden by showing that "ICE has already tried and failed to remove him" before).

To rebut Tran's showing, the government provides that there is a significant likelihood of Tran's removal in the reasonably foreseeable future because a request for his travel documents is pending with the Consul General of the Embassy of Vietnam. (Doc. 7, at 7). The government also provides that in fiscal year 2025, 699 individuals were removed to Vietnam, including 327 individuals who immigrated to the United States before 1995. (Doc. 7, at 7). The government further submits that since fiscal year 2025, the Embassy of Vietnam has not denied any travel document requests to Vietnam and that DHS regularly schedules

charters to Vietnam. (Doc. 7, at 7). Given the efficiency of the government's application for Tran's travel document after his supervised release was revoked, the likelihood that Vietnam will issue a travel document, and the regularity of charters to Vietnam, the Court finds that Tran's detention is related to the purpose of effectuating his removal and that there is a significant likelihood of Tran's removal in the reasonably foreseeable future. *See Zadvydas,* 533 U.S. at 701*; see Phan*, 2026 WL 1103774, at *1 (finding a significant likelihood of removal when the government produced a travel document and scheduled a charter flight to remove petitioner to Vietnam within seven months of ICE custody); *see also Nguyen*, 2026 WL 1147188, at *3-*4 (finding a significant likelihood of removal when the government produced a travel document and scheduled a charter flight to remove petitioner within eight months of ICE custody). However, the Court notes that Tran has been detained for only a few weeks beyond the presumptively reasonable sixth month period of detention. (Doc. 7, at 6). As the period of Tran's immigration detention increases, the likelihood of his removal will become increasingly suspect. *Zadvydas*, 533 U.S. at 701.

V.    **CONCLUSION**

For the foregoing reasons, Tran's petition for writ of habeas corpus is **DENIED**. (Doc. 1). The government is **ORDERED** to provide the Court with a status update within thirty days, by end of business on August 24, 2026, on whether Tran's removal to Vietnam has been effectuated. If the government fails to effectuate Tran's removal within thirty days, Tran may reopen his habeas action.

An appropriate Order follows.

BY THE COURT:

Dated: July 24, 2026

*/s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States District Judge**

11